## James D. Rhoads v. Archibald Given.

The statute of March 15th, 1875, in relation to the lien of taxes, provides that the lien of a State or county tax on the real estate of a taxable shall, for and during the year it is imposed, be paramount to all other liens upon it. To secure this priority, however, of the lien of a county tax assessed during the year on the real estate of a taxable over the lien of a mortgage of it to a creditor on which it had been sold during the year on a *levari facias* and the proceeds of the sale brought into court by the sheriff, the assessment of the tax simply was not sufficient, but it was necessary that the collector of the tax should have duly levied it on the real estate before the same had been converted into personalty by the sale under the *levari facias* on the mortgage.

At this term the sheriff had obtained leave and deposited the sum of ninety-seven dollars in court, which by virtue of a certain writ of *levari facias* at the suit of James D. Rhoads *v.* George L. Garsed, issued out of this court to the present term, and upon which he had set up and sold on the 13th day of November instant to the plaintiff for the sum of twenty-five thousand dollars the real estate in the said writ mentioned, he had received as part of the said sum paid to him as sheriff, and which sale had been returned to this court at the present term. And that at the time and place of the said sale Archibald Given, Esq., County Tax Collector for the Northerly Collection District

of the city of Wilmington, in which said real estate was situated, gave verbal notice to him as sheriff that he had a claim against said real estate for a county tax amounting to ninety-seven dollars assessed or imposed by the levy court of the county for the present year of 1876 against the said George L. Garsed, the mortgagor and defendant in the said writ of *levari facias ;* but he, your petitioner, is not advised that any actual levy by attachment, sequestration, execution, or other process for making or securing the said tax was ever made upon the said real estate, or upon any part thereof. He further represents to the court that the mortgage under which it was sold at said sale was for the purchase-money, and bears date October 8th, 1870, and was recorded in the recorder's office of this county on the 11th day of October, 1870. And having been notified by the attorney of James D. Rhoads, the mortgagee and plaintiff in said writ of *levari facias,* who is entitled to the whole of the fund in hand arising from said sale after deducting the charges to which the same is legally subject, not to retain the amount of tax so as aforesaid claimed by the said county tax collector out of the said proceeds of sale and not to pay the same to him or to any other person by reason of said claim, denying the validity thereof as against said mortgage debt, and claiming and demanding said amount as part of the proceeds of said sale to which said plaintiff is entitled by virtue of his said mortgage and the lien thereof upon said real estate and the proceeds of the said sale. The petitioner would further represent that the sum appearing by the said writ of *levari facias* and claimed by the said plaintiff to be due to him is thirty thousand dollars. And the petitioner, being advised that it would not be safe for him to pay it over under such circumstances, prays leave to pay the said amount of ninety-seven dollars into court, etc.

This was followed by a petition from James D. Rhoads, the plaintiff, alleging the same facts substantially and submitting that he was entitled to have the said amount so paid into court paid out to him, and praying that it might be so ordered by the court, upon which a rule was laid on the said Archibald Given, Esq., County Tax Collector for the Northerly District of the city of Wilmington, to show cause wherefore the said amount

should not be paid to the said James D. Rhoads, the said mortgagee and plaintiff in the said writ of *levari facias.*

*Gray*, for Given, defendant, in the rule, now showed cause : By virtue of the act of the General Assembly, passed on the 15th day of March, 1875, in relation to the lien of taxes, the lien of the State or of a county for a tax imposed is for the year paramount to any and all other liens on any real estate bound by it. The words of the act are that taxes imposed by the levy court of a county or by the State for its own purposes shall have priority of lien upon real estate, provided the same shall have been duly levied before such estate has been converted into personal property by sale under legal process. This provision shall not extend to more than the taxes of the year when the conversion takes place, nor shall it avail unless notice of the claim for taxes be given to the person making the sale at least fifteen days before the return of the process on which the sale was made, if there be so many days before such return. From this it is apparent and palpable that the lien of a State tax or county tax imposed by the levy court on any real estate for the year is for and during that year paramount to any other whatever binding upon it and is the first to be paid out of the proceeds of the sale of it by the sheriff or other officer selling it on legal process ; and such has been the practice of the sheriff in this county, at least, whenever notice of the claim for it has been served upon him by the tax collector fifteen days before the return of the process on which the same had been sold by him. And this is the rule and the practice where the provisions of the law are similar in other States. *Black on Tax Levies* 154.

*Patterson*, for the plaintiff in the rule : The question in this case is whether the simple act of imposing or assessing the tax on the real estate by the levy court merely, without any levy of it afterward by the collector of it on the real estate itself and before the conversion of it into personal property by the sale of it under the legal process, is sufficient to constitute, fix, and establish the lien of the tax on the real estate so as to give it the paramount and extraordinary priority claimed for it on the

12

other side under their construction of the act, but which we contend is not the correct construction of it.

*Gray :* While the term taxes "imposed" by the levy court of a county or by the State is as broad and comprehensive a term as could be employed, and clearly includes any and every tax laid by the authority of either, the term duly "levied" or assessed is far more frequently employed both in legal proceedings and in ordinary speech in the same broad and comprehensive sense, and is often employed perhaps, in both ways to express the assessment or imposing of it by the assessor subject to the review and sanction of it by the levy court, as the collection of it by the collector afterward; and an annual imposition of county taxes is as often called, and probably more frequently in ordinary conversation by the community in general, a tax levy than a tax assessment, while Webster in his definition of the word levy, when employed in relation to taxes, recognizes it as possessing either or both meanings.

*The Court:* We think the legal definition of the word *levy,* both as a verb and a noun, given by Mr. Webster in his dictionary when employed in relation to a public tax has reference rather to the collection than the assessment of it. But when we turn to our own statute establishing the constitution and defining the general powers of the levy court in each of the counties, we find there are certain provisions in it which we think clearly and conclusively indicate the sense in which the legislature used the term *levied* in contradistinction to the term *imposed* in the act now under consideration. One of the law definitions of the word *levy* given by Mr. Webster, is "The taking or seizure of property on executions to satisfy judgments, or on warrants for the collection of taxes; a collecting by execution." The provisions in our general statute to which we have before referred are in the 17th and 18th sections of it, the first of which provides, among other things, that " the levy court in each county shall sit as a court of appeal on the first Tuesday of March in every year, and on such days and times thence next in said month ensuing as it shall be necessary to adjourn to, and shall examine

the assessments returned by the assessors, and the corrections thereof and additions thereto that may have been made, and shall receive, hear, and determine appeals against the same." *Rev. Code* 62. And the second of which provides also, among other things, as follows : " And the said court shall on or before the first Tuesday of April in every year cause to be issued to the collector of each hundred a duplicate of the assessment list of the hundred of which he is collector, with a warrant thereto annexed under the hands of two or more of the levy court according to this form : 'We command you that you collect from the several persons named in the duplicate annexed for their poor, road, county, etc., taxes, etc., etc., etc., and if any person named in said duplicate shall not pay the said rates in ten days after you have demanded the same, we command you in such case that you levy and make the said rates or the part thereof remaining unpaid, with lawful costs, in the manner prescribed by law.' " *Rev. Code* 63, 64. And that will be found in chapter eight of the revised statutes in relation to collectors which makes it the duty of the collector, if any person shall fail to pay to him in ten days after demand the whole or any part of his tax, to levy and collect the same with costs, by distress and sale of his personal property, ten days' notice of such sale to be given by advertisements posted in four of the most public places of the county, two of which must be in the hundred of the collector. But if the owner of any real estate shall not reside in the hundred or shall be a minor, or shall fail to pay the tax thereon in ten days after demand, it shall be the duty of the collector to levy and collect the same with costs by distress and sale of the personal property of the tenant thereof if payment be not made by such tenant in ten days after demand by the collector, the like notice of such sale to be given by advertisements as before provided. Or if the collector shall not be able to find personal property of taxables or their tenants sufficient to pay the taxes against such taxables he shall have power after the first day of September next following the date of his warrant to levy and collect such taxes from the lands and tenements of such taxables. And then follow several other special provisions for the collection of such taxes by him

out of the lands of such taxables, with the order in which they are to be pursued by him under the command and authority of his warrant to levy and collect the taxes committed to him for collection. *Rev. Code, secs.* 11, 12, 13, *p.* 88.

And it is worthy of remark that in each of these sections of the statute last referred to, whenever provision is made for the collection of them by the summary process of legal execution without suit or judgment, with which power and authority every such tax collector is expressly invested by law, the terms employed invariably are, " it shall be his duty *to levy and collect* the same, with costs, by distress and sale of the personal property of every defaulter made subject to such execution process," and which, in the uses of the law at least, is unquestionably the most appropriate and correct sense in which the term *levy*, either as a verb or a noun, can be employed when it is thus applied, for in its legal application to process of execution it has no exact synonym in any other single word in our language. And as these statutes are all in *para materia*, the meaning of the phrase as employed in the act of March 15th, 1875, we have no doubt is that the tax in this case should have been duly levied in some one of the methods prescribed in the provisions of the other statute to which we have referred, on the personal or real property of the owner and taxable in question before his real estate bound by the mortgage had been converted into personal estate by the sale of it under the process of *levari facias* upon it by the sheriff, in order to give the claim for the county tax against him in the hands of Given, the collector, a priority of lien upon said real estate over that of the mortgage. We therefore order the rule in this case to be made absolute.